**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **LORENZO RAINER, #121380,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:05-CV-916-T** |
| | ) | |
| **CAPTAIN BARRETT, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ANSWER AND SPECIAL REPORT

COME NOW the defendants, **Captain Barrett, Warden Terrance McDonnell, COI Johnnie Dumas, COI Willie Jackson, Sgt. Carl Clay, COI Bonnie Morgan, and COI Doris Vickers** by and through Cheairs M. Porter, Assistant Attorney General for the State of Alabama and hereby file their Special Report.

## PARTIES

1.    The plaintiff, Lorenzo Rainer, is in the custody of the Alabama Department of Corrections ("DOC") and is incarcerated in the Kilby Correctional Facility, Mt. Meigs, Alabama.

2.    The plaintiff has named as a defendant Captain Bobby Barrett, who is employed by DOC as a Correctional Officer Supervisor II at the Kilby Correctional Facility;

3.    The plaintiff has named as a defendant Warden Terrence McDonnell, who is employed by DOC as a Warden III at the Kilby Correctional Facility;

4.    The plaintiff has named as a defendant Johnnie Dumas, who is employed by DOC as a Correctional Officer I at the Kilby Correctional Facility;

5.    The plaintiff has named as a defendant Willie Jackson, who is employed by DOC as a Correctional Officer I at the Kilby Correctional Facility;

6.    The plaintiff has named as a defendant Carl Clay, who is employed by DOC as a Correctional Officer II at the Kilby Correctional Facility;

7.    The plaintiff has named as a defendant Bonnie Morgan, who is employed by DOC as a Correctional Officer I at the Kilby Correctional Facility; and

8.    The plaintiff has named as a defendant Doris Vickers, who is employed by DOC as a Correctional Officer I at the Kilby Correctional Facility.

## PLAINTIFF'S ALLEGATIONS

Plaintiff brings an Eighth Amendment claim under 42 U.S.C. § 1983 claiming that defendant Dumas used excessive force against him. Plaintiff alleges through 42 U.S.C. § 1985 and 1986 that defendants entered into a conspiracy to use, and to cover up the use of, excessive force against the plaintiff.

Under Ground One, the plaintiff contends that on June 3, 2005, the defendant Dumas, maliciously beat the plaintiff, who is paralyzed and in a wheelchair, with defendant Jackson's baton (hereinafter the "Incident"). The plaintiff further contends that defendants Jackson, Clay, Morgan, and Vickers actively joined in a conspiracy to help beat the plaintiff by holding the plaintiff by the wrists and legs. The plaintiff contends that the aforementioned defendants furthered a conspiracy to cover-up the Incident by writing-up the plaintiff on two disciplinary violations for the Incident. (*See* Plaintiff's Compl. p. 2 and 3).

Under Ground Two, the plaintiff contends that on June 20, 2005 during the disciplinary hearing on the Incident (the "Hearing"), defendant Clay served as the

Hearing officer for the disciplinary violation. Defendant Clay allegedly furthered the conspiracy to cover-up the Incident by "illegally" administering oaths and ignoring the excessive use of force against the plaintiff and the violation of Administrative Regulation #403 when making his decision in the Hearing. Furthermore, during the Hearing, the defendants Dumas, Jackson and Vickers allegedly furthered the conspiracy to cover up the Incident by using erroneous facts and committing perjury in the Hearing. (*See* Plaintiff's Compl. p. 3).

Under Ground Three, the plaintiff contends that defendant McDonnell entered into the conspiracy to cover-up the Incident by not performing a personal investigation into the facts of the Incident. The plaintiff further contends that defendant Barrett entered into the conspiracy to cover up the Incident. (*See* Plaintiff's Compl. p. 3).

### **DEFENDANTS' RESPONSE**

#### **Ground One**

1.    Defendant Dumas denies that she used excessive force against the plaintiff. Defendant Dumas affirmatively states that she used only that amount of force necessary to maintain order and restore discipline.

2.    Defendant Dumas denies that any of the plaintiff's constitutional rights have been violated.

3.    Defendant Dumas admits that she struck the plaintiff approximately (4) times on his Tibia area with defendant Jackson's baton. Defendant Dumas admits she later struck the plaintiff (2) more times around the Radial nerve with defendant Jackson's baton. (*See* Ex. C).

3

4.     Defendant Dumas denies each any every material allegation not expressly admitted herein, and demands strict proof thereof.

4.     Defendants Jackson, Clay, Morgan and Vickers deny each and every material allegation and demand strict proof thereof.

## Ground Two

1.     Defendant Clay admits that he was the Hearing officer for the Incident, and denies recklessly and illegally administering oaths and ignoring the excessive force claim of the plaintiff.

2.     Defendant Clay denies each and every other material allegation not admitted herein and demands strict proof thereof.  (*See* Ex. B).

3.     Defendants Jackson and Vickers deny recklessly and illegally administering oaths and using erroneous facts and perjured testimony in the Hearing to cover up the Incident.

4.     Defendants Jackson and Vickers deny each and every material allegation not admitted herein and demand strict proof thereof.

## Ground Three

1.     Defendant McDonnell denies each and every other material allegation not admitted herein and demands strict proof thereof.

2.     Defendant Barrett admits that he signed off on the disciplinary concerning the Incident.  (See Ex. I).

3.     Defendant Barrett denies each and every other material allegation not admitted herein and demands strict proof thereof.

## DEFENSES

1.     Defendants assert the affirmative defenses of sovereign and qualified immunity.

## DEFENDANTS' EXHIBITS AND INITIAL DISCLOSURES

1.    Exhibit A – Affidavit of Captain Bobby Barrett

2.    Exhibit B – Affidavit of COII Carl Clay

3.    Exhibit C – Affidavit of COI Johnnie Dumas

4.    Exhibit D – Affidavit of COI Bonnie Morgan

5.    Exhibit E – Affidavit of COI Doris Vickers

6.    Exhibit F – Affidavit of ROII Jarrell Hogwood

7.    Exhibit G – Affidavit of Warden Terrance McDonnell

8.    Exhibit H – Affidavit of COI Willie Jackson

9.    Exhibit I – Documents maintained in the usual and ordinary course of business at Kilby Correctional Facility, including Team Roster for June 3, 2005; Disciplinary Report for Lorenzo Rainer; Institutional Incident Report; Statement of COI Doris Vickers; Statement of COI Willie Jackson; Medical Records; Statement to Disciplinary Chairman from Lorenzo Rainer; Questions [Interrogatories] to COI Jackson with answers; Questions [Interrogatories] to Officer Dumas with answers; Questions [Interrogatories] to Sgt. Reeves with answers; and Questions [Interrogatories] to COI Vickers with answers.

10.   Exhibit J – State of Alabama Department of Corrections Administrative Regulations # 207 and # 403

11.   Names and employment positions of others having personal knowledge of the claims asserted:

      A.    Otis Barnes, Correctional Officer I. – witnessed a part of the Incident and aided in restraining the plaintiff. (*See* Ex. A).

B.     Arthur Murray, Correctional Officer – aided in applying handcuffs to the wrists of the plaintiff. (*See* Ex. A).

## STATEMENT OF FACTS

On June 3, 2005 in the Kilby Correctional Facility dining hall, defendant Dumas was counseling the plaintiff on his negative behavior. (Ex. C). The plaintiff swung at defendant Dumas with his left elbow and extended his left forearm in an attempt to strike defendant Dumas. (Ex. C). The plaintiff appeared to attempt to get out of his wheelchair and attack Defendant Dumas. (Ex. F). Defendant Vickers arrived at the scene and attempted to restrain the plaintiff. (Ex. C and E). The plaintiff continued to resist. (Ex. C). Defendant Jackson arrived on the scene and tried to assist in restraining the plaintiff. (Ex. C and H). The plaintiff was on the floor kicking his legs and screaming at the officers. (Ex. A and C).

Defendant Dumas retrieved defendant Jackson's baton from his baton ring and ordered the plaintiff to stop. (Ex. C and H). The plaintiff continued to kick at defendant Dumas. Defendant Dumas struck the plaintiff (4) four times on his Tibia area while giving the plaintiff a verbal command to "stop." (Ex. C). The plaintiff slightly freed himself and swung at defendant Dumas. Defendant Dumas struck the plaintiff (2) two more times around the Radial nerve. (Ex. C). COI's Barnes and Murray assisted in restraining the plaintiff and placed handcuffs on the plaintiff. (Ex. E).

The plaintiff was placed in his wheelchair and escorted to the healthcare unit for a body chart. (Ex. A). A body chart was not performed on the plaintiff because he was uncooperative. (Ex. I).

The Hearing (concerning the plaintiff's behavior as violations of DOC Rules) was held on June 20, 2005 for the Incident. (Ex. I). Defendant Clay served as the Hearing officer. (Ex. B). After the Hearing, disciplinaries were issued for the plaintiff's behavior during the Incident. (*See* Ex. A, B and I).

<h2 style="text-align:center">ARGUMENT</h2>

## I. PLAINTIFF'S EXCESSIVE FORCE CLAIM IS WITHOUT MERIT

Claims of excessive force against inmates are governed by the Eighth Amendment's proscription of cruel and unusual punishment. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force . . . was unreasonable, and thus unnecessary in the strict sense." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986). Prison administrators should be accorded "wide-ranging deference" in executing practices that are necessary to preserve internal order and discipline and maintain institutional security. Id at 321-22, (*quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878 (1979)).

Defendant Dumas first attempted to use verbal commands to control the plaintiff. (Ex. C and H). After the verbal commands did not appear to be sufficient to defendant Dumas, she used a baton to control the plaintiff. (Ex. C). In analyzing whether defendant Dumas's behavior was appropriate, the Court should not substitute its own judgment for, and should give wide deference to, defendant Dumas's choices in subduing the out of control inmate plaintiff.

7

To establish an Eighth Amendment claim of excessive force, the plaintiff must prove that "'force was applied ... maliciously and sadistically for the very purpose of causing harm.'" Whitley 475 U.S. at 320-21, 106 S.Ct. at 1084-85. The "core judicial inquiry" in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm". Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) (the "core judicial inquiry" referred to by the Hudson Court as the "Whitley approach"). To determine whether force was used "maliciously and sadistically for the very purpose of causing harm" under the Whitley approach, there are five factors to review: (1) "the extent of the injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell 169 F.3d at 1375 (citing Whitley, 475 U.S. at 321, 106 S.Ct. 1078); Also see Hudson, 503 U.S. at 7, 112 S.Ct. at 999.

In applying the Whitley factors to the instant case, it is clear that the plaintiff cannot maintain a claim of excessive force. First, there are no allegations of even a de minimus injury to plaintiff. (See Ex. I). The plaintiff's emergency treatment record shows that he was too uncooperative to obtain a body chart. (Ex. I). There are no facts supporting an injury in his complaint. (See Plaintiff's Compl.).

Second, the use of force used by defendant Dumas was necessary. The plaintiff lunged first at defendant Dumas. Defendant Dumas attempted unsuccessfully to use verbal commands to subdue the plaintiff. (Ex. C). Other officers attempted to restrain

the plaintiff and the plaintiff continued to kick at defendant Dumas. (Ex. A). The use of the baton was a necessary response after the other attempts to subdue the plaintiff were apparently ineffective. (*See* Ex. A, C and I).

Third, the use of force by defendant Dumas was only that amount of force necessary to subdue the plaintiff. Defendant Dumas struck the plaintiff only after she and other officers tried unsuccessfully to verbally and physically restrain the plaintiff. (Ex. C). The force of striking the plaintiff with defendant Jackson's baton was also accompanied by a direct order for the plaintiff to stop his attack against defendant Dumas. (Ex. C). The plaintiff slightly freed himself from the officers' grip and took another swing at defendant Dumas. (Ex. A and C). Only after the plaintiff attempted to hit defendant Dumas again did defendant Dumas strike the plaintiff again. (Ex. A and C). Defendant Dumas struck the plaintiff a total of (6) six times, a number of times under the circumstances necessary to restore order. (Ex. C).

Fourth, defendant Dumas made efforts to temper the use of force by first allowing other officers an opportunity to restrain the plaintiff and giving the plaintiff a direct order to stop attempting to strike defendant Dumas. Only then was a sufficient amount of force used to restrain the plaintiff in order to place handcuffs on him.

Finally, Defendant Dumas acted reasonably in response to the threatening actions of an angry and insubordinate inmate, who refused to follow a direct order, and repeatedly attempted to strike defendant Dumas. (*See* Ex. A and C). The force was only the amount necessary to restore order and discipline. The plaintiff has presented bare allegations with no evidence to show any other purpose. (See Plaintiff's Compl.). Because there is insufficient evidence to establish plaintiff's claim of excessive force

against defendant Dumas, this Court should enter a summary judgment in favor of the defendants.

## II. PLAINTIFF'S VAGUE ALLEGATIONS FAIL TO SUPPORT A CONSPIRACY CLAIM

Plaintiff asserts that the defendants conspired to interfere with the civil rights of the plaintiff. The Eleventh Circuit has found that:

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. *See, e.g,* Burnett v. Short, 441 F.2d 405 (5th Cir.1971); Guedry v. Ford, 431 F.2d 660 (5th Cir.1970); Granville v. Hunt, 411 F.2d 9 (5th Cir.1969). . . It is not enough to simply aver in the complaint that a conspiracy existed. *See* Ostrer v. Aronwald, 567 F.2d 551 (2nd Cir.1977); United States Ex rel. Simmons v. Zibilich, 542 F.2d 259 (5th Cir.1976). *See also* Black v. United States, 534 F.2d 524 (2nd Cir.1976); Fine v. City of New York, 529 F.2d 70 (2nd Cir.1975). A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy. 2A J. Moore and J. Lucas, Moore's Federal Practice ¶ 8.17[5] at 8-180, 181 (2[nd] ed.1984).

Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir.1984). Plaintiff stated only vague and conclusory allegations regarding the alleged conspiracy among defendants to violate his rights. (Plaintiff's Compl.). He has failed to show the existence of the claimed conspiracy. Thus, the conspiracy claims should be dismissed.

## III. DEFENDANTS ARE IMMUNE FROM SUIT

To the extent the defendants are sued in their official capacities, they are immune from liability. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment therefore

not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry. *See* <u>Edelman v. Jordan</u>, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56 (1974); *and see* <u>Quern v. Jordon</u>, 440 U.S. 332, 340-43 (1979)(Finding that traditional sovereign immunity of the States overrides a § 1983 claim). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. *See* <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 101-02, 104 S.Ct. 900, 908-09 (1984). "[I]f a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." <u>Summit Medical Associates, P.C. v. Pryor</u>, 180 F.3d 1326, 1336 (11th Cir. 1999). The present suit is in reality a suit against the State. Thus, defendants are absolutely immune from damages liability.

In addition, the defendants are protected by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Wilson v. Blakenship</u>, 163 F.3d 1284, 1288 (11th Cir. 1998)(*quoting* <u>Lassiter v. Alabama A&M Univ. Bd. of Trustees</u>, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)(*quoting* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). Because the alleged acts of the defendants consist of discretionary functions, and because the actions do not violate any clearly established constitutional or statutory rights, the defendants are protected by qualified immunity. <u>Wilson</u>, *supra* (holding that the marshal, wardens, and corrections officer were protected by qualified immunity). The Eleventh

Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Wilson</u>, 163 F.3d at 1295; and *see* <u>Whitley</u> at 475 U.S. at 321-22, 106 S.Ct. at 1085.  In maintaining order and discipline, and in restraining the plaintiff, defendants are protected by immunity.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

WHEREFORE, based on the above-cited facts and law considered, the defendants request that a summary judgment be entered in their favor.

Respectfully submitted,

TROY KING (KIN047)
ATTORNEY GENERAL


/s/ Cheairs M. Porter
CHEAIRS M. PORTER (POR015)
ASSISTANT ATTORNEY GENERAL

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 8th day of November, 2005, served a copy of the foregoing on the plaintiff by placing a copy of same in the United States mail, postage pre-paid and addressed as follows:

Mr. Lorenzo Rainer
#121380
Kilby Correctional Facility
POB 150
Mt. Meigs, AL 36507

/s/ Cheairs M. Porter
CHEAIRS M. PORTER (POR015)
ASSISTANT  ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 353-8811
(334) 242-2433 (fax)